Gray v. Bastedo.

---

ALEXANDER GRAY v. WILLIAM I. BASTEDO, EXECUTOR, &c.

1. A single judge of the Court of Common Pleas may, under the law generally applicable in this state, hold that court and perform all its functions.
2. There being no express law or long-continued usage requiring any specific number to attend its sessions, any number determined by necessity or convenience so attending will be competent to hold the court.
3. It is not admissible to read affidavits to contradict a record returned with *certiorari*, upon the hearing.

On *certiorari* to Camden Common Pleas.

The plaintiff let premises to one Wolfe, under a written lease for one year, rent payable monthly. The defendant, by his writing, guaranteed the payment of the rent. Suit was brought in the District Court of Camden and judgment recovered for a balance of rent remaining unpaid by the tenant. This judgment was appealed to the Camden Pleas, and by the

judgment of that court was affirmed. By *certiorari* the judgment of the appellate court is brought to this court for review.

One of the reasons assigned for reversal is that the cause was heard and decided by a single judge of the Common Pleas; and evidence was taken, under a rule allowed for that purpose, to show that a justice of the Supreme Court, sitting alone in the Common Pleas, heard and decided the cause. The other reasons relate to the legality of the judgment of affirmance on the facts certified on the state of the case.

Argued at June Term, 1884, before Justices KNAPP and DIXON.

For the plaintiff, *John K. R. Hewitt.*

For the defendant, *C. V. D. Joline.*

The opinion of the court was delivered by

KNAPP, J. Assuming, as we must, that the facts certified in the state of the case as found by the trial court are true, it is not perceived how the appellate court could have adjudged otherwise than to affirm the judgment appealed from.

A valid contract of suretyship, unconditional in its terms, was admitted in the case to have been made. There is found as a fact, and not contested on the trial, that rent was due upon the demised premises, which the principal had failed to pay according to the terms of his contract. Upon his default in payment, the liability of the surety to pay for him became complete. Nothing appears in the case which in law absolved him from the burden of his undertaking. The only facts indicated in the reasons filed which could work such relief to the surety, viz., an extension of the time of payment to the principal beyond that stipulated in the contract, and misleading representations to the defendant as to the state of the payments of the principal, made by the plaintiff to the detriment of the defendant as surety, are expressly negatived by the findings of the court below. There is no reason, then, for dis-

turbing the judgment on the ground of any legal error committed in the court below in deciding the cause.

The other reason filed is designed to raise the question whether the Inferior Court of Common Pleas in this state is lawfully organized for hearing and determining causes by the presence of one of its judges only.

The question as discussed has relation only to the powers and incidents of the court under laws and rules obtaining generally in the state, excluding those statutes of merely local application, (none of which are found applicable to Camden county,) with provisions altering the regulations in general force in the state. Nor does it relate to the organization of either the Orphans' Court or Court of Quarter Sessions of the Peace, both of which are governed by provisions specially applicable to those courts. The question presented is whether the Common Pleas, in the exercise of its ordinary jurisdiction, can, as the law stands, perform its legitimate functions through a single judge.

A court is a legal entity. Its judges, or some of them, form by their presence a constituent element of its being. It is, as Bacon defines it, "An incorporeal being, which requires for its existence the presence of the judges or a competent number of them." What shall be such competent number to form a court of general jurisdiction must be determined by the terms of the edict creating it ; the emanation of some power endowed with suitable control over it; by its own long-established usage—or, in the absence of either of these forces to control it, by its own will. In the plaintiff's discussion of the point made by him, he seems to assume that because there are several judges of the Court of Common Pleas, all must sit in organizing the court, or, if not so many, at least a majority is necessary to constitute a quorum. Between these two positions he is not quite at rest upon the question which is the correct one. But why we must conclude that upon one or other of these circumstances its existence as a court depends, is not made clear. The conclusion would be forced upon us

that either condition was essential if made so by any grant, ordinance or other creative legislation, or any law of its being.

The rule undoubtedly is, as to all judicial bodies exercising a special and limited jurisdiction, that all must act in the cause, matter or thing committed to the persons who compose the body until their powers be fully executed. The court of two justices in this state, and commissioners for making assessments, and the like, are apt examples of the class. *State* v. *Passaic*, 9 *Vroom* 60. And it seems to be a widely-accepted if not a universal rule, in all deliberative bodies composed of definite numbers, that a majority is necessary to the transaction of business.

But the rule applicable to special tribunals does not apply to courts of general jurisdiction, and the Court of Common Pleas is such court. Nor am I cognizant of any general rule or authority requiring the majority of the judges of such a court to be present at its sessions and participating in the performance of its functions on pain of death, temporary or permanent, to it as a court, or without which the assumptions of a lesser number to perform its functions are mere judicial nullities. A position on this question, not founded on express law or some controlling custom, which admits the power of a less number than the whole to hold the court, must, as I think, concede a like power to any one judge, for between the whole number and the least there is none designated as a limit. The number which must be regarded as sufficient, when not otherwise prescribed, is that which necessity, convenience, or the determination of the judges for the time being shall deem to be so. From provisions in law for a number of judges of a court, a policy is apparent requiring, as far as possible, that the judgment of the many shall be had. The faithful performance of duty in each secures this. But the question of power to preserve organization is beyond this, and the court should not fall if sickness or disqualification to act, or absence from neglect, leaves but one to perform the public duty, unless legislation has annexed this infirmity to its existence.

In looking into the legislation which gave rise and shape to

this court, there will be nowhere found any regulation from the earliest times until this day, directly or remotely requiring the attendance of any number of its judges to give the court authority in action.   And I do not remember ever before any serious question to have been made of the power of any one of the judges to do so.

In the earliest colonial times, county courts came into exist-ence in different parts of the state, and from these our Common Pleas developed.   Legislative edicts are to be found, dating back to the latter part of the seventeenth century, both in East and West Jersey, providing for them, and somewhat defining their jurisdiction.   In November, 1675, (*Leaming & Spicer, p.* 97,) East Jersey was divided into four counties, and provision was made for the establishment of a county court in each, the members of the court to be elected in the county, and cognizance was given of " all causes actionable," with an appeal " to the Bench or Court of Chancery."   In West Jersey, county courts of a less definite character, even, were established. After the surrender of the government, Queen Anne, by her commission to Lord Cornbury, conferred upon him, with advice and consent of the council, power " to erect, constitute and establish such and so many courts of judicature and public justice within the province under his government as he and they should think fit and necessary for the hearing and determining of all causes, as well criminal as civil, according to law and equity."   Power was also given to appoint judges, commissioners of Oyer and Terminer, justices of the peace and other officers and magistrates, " for the better administration of justice and putting the laws in execution."   But the ordinance of George II., established in 1723, found in appendix to 1 Halsted, has been regarded as the direct source of the *jurisdiction* of this as well as other courts in the state.   It ordains and directs " that the county court for holding of Pleas continue to be held and kept in each of the several and respective counties of our province of New Jersey, to hear and determine all suits, controversies, quarrels and differences that may arise within said counties, for any sum above the value

of forty shillings, causes wherein the right or title of any lands, tenements, hereditament is in anywise concerned, excepted."

The constitution adopted July, 1776, section 12, provided that the judges of the Inferior Court of Common Pleas in the several counties should continue in office for five years. In October, 1776, (*Pat. L., p.* 38,) an act was passed by the legislature providing " that the several courts of law and equity of this state shall be confirmed and established and continue to be held with the like powers under the present government as they were held at and before the Declaration of Independence." Up to this time, and until the adoption of the new constitution in 1844, no limit had been established to the number of judges appointable in this court. Section 6 of article VI. of the new constitution declared that there should be no more than five judges of the Inferior Court of Common Pleas in each of the counties of this state after the terms of the judges of the said court now in office shall terminate. This number, by the legislation of 1855, was reduced to three in each county, exclusive of the justice of the Supreme Court, and it was provided that any two of the judges might hold the Orphans' Court and Court of General Quarter Sessions of the Peace. *Rev., p.* 221, § 59.

In none of the general legislation touching the organization of this court or controlling its practice, have I found any provision requiring the presence of any certain number of its judges at the sessions of the courts or for the performance of any of the functions, general or special, within its jurisdiction, except it may be in the matter of granting licenses for inns and taverns, and no adjudication is found, in our books, in the state declaring any particular number of judges to be necessary in the organization and transaction of the business of the court.

The long-established usage in this court is against the plaintiff's position. There has been no uniform practice in the court to require or have the presence of the whole or a majority, or any specific number or proportion, of judges in attendance upon its sessions.

It is well known that for a considerable time in the history of this court, the number of its judges was inordinately large. In some counties there were thirty or more. To have had a full attendance of the whole or a major part of the bench at such times, with a jury superadded, courts must, like town meetings, have been held outside the average court-house, for want of room within. During these times the court had the attendance of but few of its judges throughout the session, and not unfrequently its duties were performed by one. In our time it has not been uncommon for law judges, in counties provided with such officers, to hear and decide arguments, motions and causes unattended by their associates. And elsewhere the functions of the court are frequently performed by one member, without question or objection. In naturalization proceedings, it has not been deemed necessary that more than one judge should attend. There is, besides, the high authority of Mr. Griffith that such power was accorded to a single judge, and was, in his day, frequently exercised. He says, "One judge of the Common Pleas has always been deemed a court." *Griffith's Reg., vol. IV., p.* 1167.

I believe it is true that there is neither adjudication nor expression of judicial opinion upon this question, but I think it right to assume that had doubt or question existed upon the subject it would, long ere this, have been before the courts in some form for settlement. In *Wood* v. *Fithian,* 4 *Zab.* 838, the power of a single judge to hold the Supreme Court was not questioned, but in the opinion read in the Court of Errors the right was distinctly recognized. True, there was legislation authorizing it, both in the act then under review and in that of January 6th, 1799, (*Rev. L., p.* 453,) but, as I think, it was so considered aside from the provisions of either, they being in that only declaratory of a subsisting authority inherent in the court. I think a single judge of the Pleas possesses the same authority to hold that court. In this view the affidavits presented on the hearing of the cause were to support an immaterial reason.

But had I reached a different conclusion the judgment here must have been the same, for this matter is not properly brought before the court. The writ of *certiorari* brings to us the record of a judgment rendered in the Court of Common Pleas. No diminution is alleged, and the record remains before us as it was returned with the writ. It speaks absolute verity, and shows to us conclusively that the judgment brought for review was regularly rendered in that court in a proceeding within its jurisdiction. The attempt is by the affidavits of witnesses to impeach it by showing that such judgment was not rendered. This cannot be allowed. The exclusion of such testimony, for that or a like purpose, rests upon a rule so familiar and long established that citation of authorities in its support would be superfluous. The applicability of the rule to appellate proceedings in the Pleas in this state is also well established. *Paterson, &c., R. R. Co.* v. *Ackerman*, 4 *Zab.* 535; *Scott* v. *Beatty*, 3 *Zab.* 256.

For anything in the reasons filed to the contrary, this judgment should be affirmed.